UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

FLAGSTAR BANK, FSB,

        Plaintiff,

v.

EMPIRE EQUITY GROUP, INC.
d/b/a 1ST METROPOLITAN
MORTGAGE, CHICAGO TITLE
INSURANCE COMPANY,

        Defendants

_____/

CASE NUMBER: 08-11868

HON. MARIANNE O. BATTANI

**OPINION AND ORDER GRANTING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT ON COUNT I OF ITS COMPLAINT AGAINST EMPIRE EQUITY GROUP, INC. AND DISMISSING PLAINTIFF'S MOTION TO COMPEL DISCOVERY**

Before the Court are Plaintiff's Motion for Summary Judgment on Count I of its Complaint Against Empire Equity Group, Inc. (Doc. No. 14), and Plaintiff's Motion to Compel Discovery and for Sanctions (Doc. No. 27). The Court heard oral argument on November 26, 2008. For the reasons that follow, the Court **GRANTS** Plaintiff's dispositive motion and **DISMISSES** as moot, Plaintiff's Motion to Compel Discovery and for Sanctions.

**I.    STATEMENT OF FACTS**

Plaintiff Flagstar Bank, FSB ("Flagstar") underwrites and funds mortgage loans for residential properties brought to it through independent mortgage brokers. Defendant Empire Equity Group, Inc. ("Empire"), doing business as First Metropolitan Mortgage, entered into an agreement with Flagstar (the Broker Agreement) whereby Empire would submit prospective loan packages to Flagstar. Paragraph 3.1 of the

Broker Agreement contains the following provision, "Seller warrants that all Mortgage Loan Documents submitted by Seller for each Mortgage Loan are in every respect valid and genuine, being what they support to be and all information submitted in each Mortgage Loan Document is true and accurate." Pl.'s Ex. A, Art. 3.1(a).

Empire further agrees to indemnify and hold Flagstar harmless from "any and all losses, liabilities, claim, damages, or costs of any nature, including without limitation, attorneys' fees and costs, and actions suffered or incurred by Flagstar which arise out of, result from, or relate to:

> (i) [Empire's breach] of any covenant, condition, term, obligation, representation or warranty contained in the Agreement, the [Broker] Guide, or in any written statement, certificate, or Mortgage Loan Document furnished by [Empire] pursuant to the Agreement or the [broker] Guide; or
>
> (ii) any material act or omission of [Empire] or any employee or agent of [Empire] which adversely affects any Mortgage Loan registered with and funded by Flagstar [under the Agreement].

Pl.'s Ex. A, Art. 4.1.

On May 13, 2005, Empire executed a "Branch Addition Form" for a New Jersey branch managed by Joseph Kohen. The form states, "We agree that by signing below all business conducted by the branch will be done pursuant to the terms of our company's active Agreement with Flagstar Bank, FSB and we will take full responsibility for all actions of this Branch." Pl.'s Ex. A.

Thereafter, Kohen submitted a loan package to Flagstar for review and approval of a mortgage loan in the amount of $693,7000 for Pearl Dwek, a borrower seeking to refinance property located in Miami, Florida. Pl.'s Ex. B. Flagstar approved the loan,

2

which was to be secured by a first mortgage. On March 23, 2006, the loan was closed, and Flagstar's funds were disbursed.

Kohen sent a second loan package to Flagstar seeking review and approval of a mortgage loan in the amount of $376,000 to Pearl Dwek for property located in Ocean Township, New Jersey. Pl.'s Ex. B. Flagstar approved the loan to be secured by a first mortgage. On March 29, 2006, the loan was closed, and Flagstar's funds were disbursed. Dwek defaulted on both loans.

According to Plaintiff, both loan agreements contained material misrepresentations sufficient to trigger Empire's obligation to repurchase the loans pursuant to the Broker Agreement. Specifically, the closing documents on the New Jersey property included a forged signature. Pl.'s Ex. D. Accordingly to Flasgstar, the New Jersey property was never transferred from its owner to Dwek, and it never received a valid first mortgage on the property, which is encumbered by a prior mortgage held by Community Bank of New Jersey. Pl.'s Ex. C.

A title insurance commitment from Commonwealth Land Title Insurance Company ("Commonwealth") was included in the Florida mortgage loan transaction, in which Commonwealth committed to provide a mortgage title insurance policy for Flagstar in the amount of $743, 250. Pl.'s Ex. E. When Flagstar filed a notice of claim with Commonwealth, it discovered that Commonwealth never issued the commitment or a policy. Pl.'s Exs. F, G. Dwek simultaneously took another mortgage loan from another mortgage lender and recorded that mortgage prior to Flagstar's. Pl.'s Ex. H.

Flagstar sent Empire written notice of these breaches, but Empire has refused to comply with the obligations set forth in the Broker Agreement. Flagstar damages total

3

$1,004,277.10, plus attorneys' fees and costs. Pl.'s Ex. I. It maintains that it is entitled to summary judgment on its claim that Defendant breached their Broker Agreement.

## II. STANDARD OF REVIEW

Motions for summary judgment require the Court to look beyond the pleadings and evaluate the facts to determine whether there is a genuine issue of material fact that warrants a trial. Rule 56 mandates the entry of summary judgment if all the evidence shows that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. Celotex Corp. v. Catrett, 477 U.S. 317, 322-23 (1986). The moving party has the burden of showing that there is an absence of evidence to support the nonmoving party's case. Id. at 325. Thus, this Court determines "whether the evidence presents sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." Terry Barr Sales Agency, Inc. v. All-Lock Co., Inc., 96 F.3d 174, 178 (6th Cir. 1996) (citations omitted). This Court does not weigh the evidence, but determines whether there is a genuine issue for trial, viewing the record as a whole and viewing all the facts in a light most favorable to the nonmoving party. Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 578 (1986).

In order to avoid summary judgment, the opposing party must have set out sufficient evidence in the record to allow a reasonable jury to find for it at trial. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). "[A] party opposing a properly supported motion for summary judgment may not rest on mere allegations or denials of [its] pleading, but must set forth specific facts showing that there is a genuine issue for trial." Id. at 256. Summary judgment is appropriate if the evidence favoring

4

the nonmoving party is merely colorable or is not significantly probative. City Management Corp. v. United States Chem. Co., 43 F.3d 244, 254 (6th Cir. 1994).

## IV. ANALYSIS

The Broker Agreement unequivocally requires Empire to repurchase loans in the event there is "any evidence of fraud" or breaches of misrepresentations in the loan packages. Pl.'s Ex. A, Art. 5. The Branch Addition form, executed by Empire's Director of Lender Relations, extends the agreement to actions taken at the branch managed by Kohen. Kohen originated the loans, and the Branch address is designated on the forms. Pl.'s Ex. B. The HUD-1 Settlement statement for each loan designates the itemized portions of the proceeds that went to Empire even if Kohen did not pass it to his employer. See Exs. E and G to Pl.'s Complaint. Kohen sent the loan closing documents using a fax cover sheet bearing the letterhead of First Metropolitan Mortgage, Equity's corporate assumed name, and the documents state on their face that they were prepared by Empire Equity d/b/a First Metropolitan Mortgage. See Pl.'s reply, Ex. A.

Therefore, the Court rejects Empire's assertion that it is not responsible for the submission of loan packages from its branch manager Joseph Kohen. It is undisputed that Kohen submitted these two loan packages during the time he was employed by Empire. He was not terminated until May 25, 2006, and these loans closed in March 2006. The Court's finding is not altered by Kohen's Affidavit, wherein he states that he closed the loan "without Empire's approval and with no benefit to Empire." Def.'s Ex. 2, ¶ 4, 5. The fact that Kohen may have acted without Empire's knowledge is not material to the resolution of this dispute, given the language set forth in the Branch Agreement.

Moreover, even innocent principals are liable for the fault of their agents who have been cloaked with apparent authority. Restatement Agency 2d § 262. Contrary to Empire's assertion, Kohen was not acting outside the scope of his employment with Empire when he made the unauthorized loans.

In the alternative, Empire claims that factual issues regarding the loan packages render the relief sought in this motion unavailable. It maintains that Flagstar's inability to foreclose on the New Jersey Property because it did not receive a valid first mortgage is the responsibility of the Chicago Title Insurance Company. Chicago Title's inadequate title work rather than Kohen's alleged misrepresentations created the loss on the New Jersey property. The Court disagrees.

The branch addition contract and Brokers Agreement undermine Empire's position. The Broker Agreement provides that Empire warranties the loan packages it submits to Flagstar against any misrepresentations, and provides that Empire must repurchase the loan in the event of any fraud or breach of any representation or warranty. Ex. A at Art. 5.1 (b) and (d). Plaintiff has met its burden to show material misrepresentations were made. Joseph Shapiro provided an affidavit regarding the New Jersey Loan that states that his signature was forged on the closing documents. The Florida loan documents included a fake title commitment. Pl.'s Ex. G. Flagstar never received a first lien on the property.

Under the contract, these misrepresentations activate the repurchase provision. One of the reasons given for repurchase is in the event "Flagstar reveals any evidence of fraud in the origination and closing of the Mortgage Loan by I.) The Seller or its employees, directors, officers, agents and independent contractors. . . . Pl.'s Ex. A,

Art. 5.1(b). Further, Plaintiff has included the affidavit of Joan Anderson, Executive Vice President of Flagstar, who asserts that Flagstar would not have made the loans if it had know that the settlement agent's signature was forged or that the title commitment had never been issued. She provides the amount of loss through September 1, 2008, to be $1,004,277.10. Pl.'s Ex. I.

The Contract provides for indemnification for all losses. . .suffered by Flagstar which arise out of, result from, or relate to the breach by the Seller. Pl.'s Ex. A, Art. 4.1. Plaintiff has satisfied its burden to show Empire breached the Agreement.

## IV. CONCLUSION

Accordingly, Plaintiff's Motion for Summary Judgment on Count I of its Complaint is **GRANTED**, and Plaintiff's motion to compel is **DISMISSED** as moot.

**IT IS SO ORDERED**

_____
MARIANNE O. BATTANI
UNITED STATES DISTRICT COURT JUDGE

DATED: 1/30/09

### CERTIFICATE OF SERVICE

Copies of this Order were mailed and/or electronically filed to counsel of record on this date.

_____
Deputy Clerk

7